CRAIN, Judge.
This is a suit for damages arising out of an automobile accident between plaintiff and a Baton Rouge city police officer. The trial court found that the police officer, Donald Evans, was negligent when he struck the rear of James Johnson Jr.’s motorcycle. Evans was “tailing” Johnson in an unmarked police unit. Evans and his employer, the City of Baton Rouge, were made defendants in the suit. They appeal the trial court’s $20,075 judgment in Johnson’s favor. Johnson answered the appeal, seeking an increase in the damage award. We affirm.
FACTS
Sometime after 2:00 a.m., on August 28, 1980, Johnson and a friend were standing outside Johnson’s bar, the Sha La Boutique Lounge, on North Foster Drive in Baton Rouge. Donald Evans, a homicide detective for the City of Baton Rouge, was patrolling the area in an unmarked police car when he observed the two men. Since the bar was closed, Evans suspected possible illegal activity, and set up a surveillance across the street. After a short period, Johnson and his friend got on their motorcycles and drove off in different directions. After this point, the testimony of Johnson and Evans substantially conflicts.
Evans testified that Johnson left the lounge at high speed. Evans wanted to stop and question Johnson about his activity, so he followed him. He stated that he turned on his front grill flashing police lights and placed his flashing “kojack” light on the dashboard. He caught up to Johnson, who had stopped at an intersection, and shouted “police”. Johnson sped off and Evans gave chase. Evans was 20 to 25 feet behind Johnson, when Johnson hit his brakelights just before the stop signs at the intersection of 38th Street and Mohican. Johnson lost control of his motorcycle and flew off. Evans attempted to avoid hitting Johnson, and sideswiped the riderless motorcycle. Evans’ car ran off the road and into a vacant lot just across from the intersection.
Johnson testified to his version of the events as follows: He and his friend were working late at night remodeling his lounge, the Sha La Boutique. Before leaving that night they stood around outside the lounge and had a brief conversation. They both departed from the lounge on their motorcycles in separate directions. As Johnson stopped at the intersection of 38th and Choctaw, he noticed that a car was pulling up extremely close behind him. Because he was a bar owner, Johnson feared that someone, believing he might carry large amounts of cash, would try to rob him. Being cautious, and afraid the car might intentionally hit him, Johnson quickly turned off to his right. When he reached the intersection of 38th and Mohican he came to a stop. The next thing he remembers is lying in a ditch and being handcuffed by Evans. Johnson stated that he never saw any flashing lights on the car, never heard the driver shout anything, and never heard a police siren.
The accident broke Johnson’s right leg and his left ankle. He suffered lacerations and puncture wounds on his legs, and a head contusion. He has a 25% percent disability of his left foot.
In written reasons, the trial court found that the evidence supported Johnson’s version of the accident; Evans’ negligence was the sole cause of the accident; and Evans turned on neither his flashing lights nor his siren. The court further found that Johnson’s actions in trying to evade an unmarked car at 3 o’clock in the morning were reasonable under the circumstances.
NEGLIGENCE OF EVANS
Defendants contend that the trial court erred in finding Evans negligent. After reviewing the record, we have determined that defendants’ claims are without merit. The first issue is whether Evans struck the rear of the motorcycle while Johnson was still aboard it, or whether, as defendants contend, Evans only sideswiped the riderless motorcycle of which Johnson had already lost control.
The lower court’s determination that Evans rear-ended the motorcycle is *884 reasonably supported by the record. Plaintiffs expert testified that the physical evidence indicates the driver was on the upright motorcycle when it was struck from the rear. From the skidmarks Evans’ vehicle left it was determined that his vehicle was traveling at least 50 m.p.h. when it ran the stop sign and went through the intersection. There were no scuff marks or skid marks to indicate the motorcycle was out of control. The backrest or “sissy bar” on the motorcycle was broken in a manner that indicated the driver had been violently shoved backwards into it; a typical indicator of a rear-end collision. The rear fender, tire and axle were jammed forward into the frame of the motorcycle. There were no marks in the street, or any scrapes or other types of damage on the bike to indicate that it had fallen to the ground as a result of Johnson having lost control of the bike prior to the collision. A sideswipe to an already out of control motorcycle would probably not have caused the kind of physical damage the motorcycle actually sustained. Consequently, we find the trial court’s conclusions are not clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
We also note that the intersection was at the end of a gradual incline in the road that curved just prior to the intersection. The intersection would appear with little warning to someone who was speed-, ing down the street. Officer Evans ran the stop sign at a high rate of speed and collided with Johnson. His actions constitute negligence. Nevertheless, if Evans was entitled to the benefit of the emergency vehicle exception (contained in La.R.S. 32:24) his conduct may not have amounted to actionable negligence. La.R.S. 32:24[1] generally allows an emergency vehicle to violate certain motor vehicle safety statutes. These benefits, however, can only be invoked if the emergency vehicle is using its siren or flashing lights. La.R.S. 32:24 (C).
The trial court found that Evans did not turn on his siren or flashing lights at anytime. Consequently, Evans is not entitled to the benefit of the statute. The trial court’s conclusion is essentially a credibility call between Evans and Johnson. Although Johnson’s testimony does contain some inconsistencies, Evans' testimony does also. A trial court’s credibility determinations are entitled to great weight. Canter v. Koehring, Co., 283 So.2d 716 (La.1973).
Furthermore, Johnson’s version is supported by testimony from a witness who lived in the house next to the lot where the vehicles stopped. She stated that upon hearing loud noises, she looked out of her window and saw the accident scene. She did not, at anytime, hear a siren, nor did she see any flashing lights on the car. She did not know the unmarked car was a police vehicle. In fact, she stated that she took the vehicle’s license number down to report it to the police. She suspected the vehicle might leave the scene since the motorcycle driver appeared to be unconscious in the ditch. In contrast to the witnesses’ statements, Evans testified that he did not remember turning his flashing *885 lights off. The trial court chose to accept Johnson’s version which was corroborated by an independent witness. We find the trial court’s finding to be reasonably supported by the evidence and not clearly wrong.
CONTRIBUTORY NEGLIGENCE
The trial court held that Johnson acted reasonably under the circumstances in “attempting to evade the unmarked car at approximately three [in the morning]”. In light of the trial court’s findings that Evans used neither his lights, nor his sirens, this conclusion is not clearly wrong. It is implicit in the trial court’s ruling that Johnson was acting pursuant to a reasonable apprehension of an immediate unlawful harm. If Johnson was speeding in an attempt to evade the unmarked car, there is no evidence he was travelling at a high rate of speed. At the time of the accident, moreover, there is no evidence that Johnson was speeding. To the contrary, Johnson claims that he stopped at the intersection of 38th and Mohican, and can remember nothing further. Johnson was either struck while he was stopped, or was struck as he started across the intersection. In either case, we find no error in the trial court’s conclusion that Johnson was acting reasonably under the circumstances. See Justin v. City of New Orleans, 499 So.2d 629 (La.App. 4 Cir.1986).
QUANTUM
The trial court awarded $20,000 in general damages for Johnson’s past and future pain and disability. No claim for lost wages was asserted. Johnson contends that an award of only $20,000 constitutes an abuse of the trial court’s discretion in awarding damages. We have carefully reviewed the testimony regarding pain and suffering, and disability. We find the award within the lower range of the trial court’s broad discretion.[2]
DECREE
Accordingly, the judgment of the lower court is affirmed. Defendants are cast for costs.
AFFIRMED.

. § 24. Emergency vehicles; exceptions
A. The driver of an authorized emergency vehicle, when responding to an emergency call, or when in the pursuit of an actual or suspected violator of the law, or when responding to, but not upon returning from, a fire alarm, may exercise the privileges set forth in this Section, but subject to the conditions herein stated.
B. The driver of an authorized emergency vehicle may:
(1) Park or stand, irrespective of the provisions of this Chapter;
(2) Proceed past a red or stop signal or stop sign, but only after slowing down or stopping as may be necessary for safe operation;
(3) Exceed the maximum speed limits so long as he does not endanger life or property;
(4)Disregard regulations governing the direction of movement or turning in specified directions.
C. The exceptions herein granted to an authorized emergency vehicle shall apply only when such vehicle is making use of audible or visual signals sufficient to warn motorists of their approach, except that a police vehicle need not be equipped with or display a red light visible from in front of the vehicle.
D. The foregoing provisions shall not relieve the driver of an authorized vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others.

. We also note that the deposition testimony of the treating physician unequivocally shows that the leg casts were removed at much earlier times than the other testimony in the record indicates,